# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

EVER JOSELIN AREVALO,

    *Petitioner*,

vs.

CRAIG FARWELL, *et al.*,

    *Respondents*.

3:04-cv-00568-ECR-VPC

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court for decision on the merits. The principal issue presented is whether the petitioner's guilty plea agreement was breached because the State's Division of Parole and Probation did not conduct a psychosexual evaluation required under the plea agreement that could have made him eligible for probation on one of the two counts to which he pled.

### *Background*

Petitioner Ever Joselin Arevalo challenges his February 19, 2003, Nevada state conviction, pursuant to a guilty plea, of attempt sexual assault and first degree kidnaping.

On March 26, 2002, the State charged Arevalo by an information with first degree kidnaping with use of a deadly weapon and sexual assault with use of a deadly weapon.

At the preliminary hearing, Amy Proctor testified as follows. At the time of the hearing, she had known Arevalo for approximately two years. They had been in a relationship previously, and they had a child together who was seven months old at the time of the

preliminary hearing. They had lived together for extended periods of time. The relationship had been a rocky one, however, and they had broken up a number of times. They had broken up most recently in July 2001, when their son was one month old.[1]

Thereafter, on January 22, 2002, Arevalo showed up at the home of one of Proctor's friends where she had been visiting. Arevalo wanted for them to get back together. When asked at the hearing whether she also had wanted to get back together, Proctor responded "[k]ind of but not really because he does the same thing over and over." She testified that her thoughts as to his wanting to get back together were "[t]hat he doesn't have a job, he hasn't paid for nothing[,] and [h]e hasn't been there for me." On the day in question, an argument ensued. Arevalo forcibly took Proctor from her friend's yard, ultimately holding her at knife point. He forced her onto a city bus and then forced her to get off the bus and walk to a drain culvert in a field. They talked for about twenty minutes, and Arevalo then forcibly raped her.[2]

Proctor acknowledged on cross-examination that she had stayed overnight at Arevalo's house only three days prior to the incident.[3]

Pursuant to a written guilty plea agreement that reflected that it was signed on December 27, 2002, Arevalo and the State entered into a plea bargain on an amended information. The amended information charged petitioner under Count 1 with attempt sexual assault and under Count 2 with first degree kidnaping, both without weapon enhancements.

The written plea agreement included, *inter alia*, the following provisions:

> My decision to plead guilty is based upon the plea agreement in this case which is as follows:
>
> The State and Defendant stipulate to a sentence of a minimum of EIGHT (8) years and a maximum of TWENTY (20)

---

[1] #27, Ex. 4, at 4-5 & 24-25. The Court makes no credibility findings or other factual findings regarding the truth or falsity of the state court evidence. The Court summarizes the evidence solely as background to the issues presented in this case. No statement of fact made in describing testimony or other evidence constitutes a finding of fact by the Court.

[2] *Id.,* at 5-24.

[3] *Id.*, at 24-25.

-2-

> years as to Count 1 and a minimum of FIVE (5) years and a maximum of FIFTEEN (15) years on Count 2. The State retains the right to argue whether counts run consecutive or concurrent.
>
> . . . . .
>
> I also understand that pursuant to NRS 176.139 and my plea of guilty to a sexual offense for which the suspension of sentence or the granting of probation is permitted, the Division of Parole and Probation shall arrange for a psychosexual evaluation as part of the division's presentence investigative report to the Court. Pursuant to NRS 176A.110, that evaluation must certify that I do not represent a high risk to reoffend, before I will be eligible for probation.
>
> I understand that as to Count 2, I am not eligible for probation for the offense to which I am pleading guilty.
>
> . . . . .
>
> I understand that if my attorney or the State of Nevada or both recommend any specific punishment to the Court, the Court is not obligated to accept the recommendation.

#27, Ex. 16, at 1, 2 & 3.

On December 31, 2002, Arevalo appeared for a change of plea proceeding. The state district court ultimately declined to accept the plea, however, and returned the matter to the trial calendar as the first case on the docket for the following week.[4]

On January 2, 2003, Arevalo appeared again for a change of plea proceeding, and the state district court accepted the plea. The guilty plea agreement was filed the same date.[5]

On or about January 30, 2003, the Division of Parole and Probation issued a pre-sentence report (PSR). The provision in the guilty plea agreement and the availability of probation on Count 1 both notwithstanding, the PSR stated that "[p]ursuant to the mandatory prison term, the Division of Parole and Probation has not conducted the Psychosexual

---

[4] #27, Ex. 13. The state district judge had reached the very end of the plea colloquy, and was stating that he was accepting the plea, when the prosecutor interjected with a request that the colloquy be more specific as to the elements of the offenses. She maintained that Arevalo must admit to vaginal penetration – although he was entering a plea to attempted sexual assault. Arevalo would not admit to penetration. Faced with this dispute, the judge changed course and declined to accept the plea. *Id.*, at 5-6.

[5] #27, Exhs. 14 & 16. As before, Arevalo admitted only to attempted sexual assault. The difference in the second proceeding was that the prosecutor did not maintain that he had to admit to more than the charge to which he pled.

Evaluation." The Division recommended a sentence of a minimum of 43 to a maximum of 192 months on Count 1 and of 60 to 170 months on Count 2, with the sentences to run concurrently. This recommendation was for less time than the stipulated sentence in the plea agreement, except as to the recommended minimum sentence on Count 2.[6]

On February 13, 2003, the matter came on for sentencing. The prosecutor referenced a written statement by defendant expressing a desire for probation, but the prosecutor stated: "That's not an option in this case." Defense counsel did not challenge this statement when she addressed the court later in the proceeding. The State asked for consecutive sentencing as to the stipulated sentences. Defense counsel argued for concurrent sentencing. Otherwise, defense counsel stated that, as her argument was constrained by the stipulation, she was "going to leave [to] the Court to decide what to do in this case." The state court sentenced Arevalo, in accordance with the negotiations, to 96 to 240 months on Count 1 and 60 to 180 months on Count 2, with the sentences to run consecutively and further with the mandatory period of lifetime supervision.[7]

The judgment of conviction was filed on February 19, 2003. Petitioner did not file a direct appeal.

On January 8, 2004, petitioner's *pro se* state post-conviction petition was filed in state district court. The petition alleged, *inter alia*, that the guilty plea agreement had been breached and that his plea was unknowing and involuntary because the Division of Parole and Probation had not conducted the psychosexual evaluation and thus had deprived him of the legal possibility of even being considered for probation on Count 1. He further alleged, *inter alia*, that his counsel had been ineffective for failing to object to the lack of a psychosexual evaluation and for failing to seek enforcement or withdrawal of the plea.

---

[6] #28, Ex. 43, at 2 & 6. It was suggested later at the sentencing by the state court and prosecutor that the 170 month figure in the PSR was a typographical error, on the basis that a 14 year and 2 month sentence would be an illegal sentence under Nevada law. #27, Ex. 17, at 2.

[7] #27, Ex. 17, at 2, 6, 7-9 & 11. The mandatory lifetime supervision period was acknowledged in the plea agreement.

On June 14, 2004, the state district court issued written findings and conclusions denying the petition. The final page of the order reflects that the findings and conclusions had been submitted in draft form by counsel for the State. There was no certificate stating that the draft findings and conclusions had been copied to the petitioner, such that it appears that the draft order was submitted by the State to the state district court *ex parte*.[8]

The state district court order stated that Arevalo was claiming that "his plea agreement was breached because he was under the impression that he would receive probation."[9] Petitioner's core claim, however, instead quite clearly was that the plea agreement was breached because the State had not conducted the psychosexual evaluation that could have allowed him the possibility of being considered for probation on Count 1.

The state court order further found that "it was clear to Defendant that he would not be eligible for probation by virtue of [the guilty plea] agreement."[10] The guilty plea agreement, however, instead clearly provided that, as to Count I, Arevalo would be eligible for probation if the psychosexual evaluation certified that he did not represent a high risk to reoffend. The agreement stated that he would be ineligible for probation only as to Count 2.

Petitioner appealed the state district court's denial of the state petition, but his appeal was dismissed, in error, as untimely. The Supreme Court of Nevada accordingly never addressed the merits of the petitioner's claims.[11]

/ / / /

---

[8] The Supreme Court of Nevada has held recently that it is improper for a state district court to enter findings of fact and conclusions of law on a proposed draft submitted by the State on an *ex parte* basis without affording the petitioner an opportunity to be heard on the proposed findings and conclusions. *See Byford v. State*, 156 P.3d 691 (Nev. 2007). This Court, on the showing and arguments made in this case, expresses no opinion at this juncture as to whether findings and conclusions issued through such an *ex parte* procedure are subject to deferential review under the AEDPA or instead to *de novo* review. The Court in particular leaves for another day the question of whether any findings of fact made through such an *ex parte* procedure constitute unreasonable determinations of fact for purposes of AEDPA deferential review due to the improper *ex parte* procedure employed in making the findings.

[9] #28, Ex. 34, at 2.

[10] *Id.*

[11] #28, Exhs. 37, 39 & 42. All procedural defenses to the amended petition have been resolved. #30.

In the federal petition, as amended, petitioner alleges as follows.

In Ground 1, petitioner alleges that he was denied effective assistance of counsel when his counsel: (a) did nothing to clarify the alleged ambiguity regarding the potential range of sentencing created by the stipulated sentence, the possibility of probation on Count 1, and the lesser recommendation made by the Division of Probation and Parole; (b) failed to ensure that the psychosexual evaluation was performed and failed to advise Arevalo of the consequences of her inactions; (c) then failed to correct her error by failing to file a motion to withdraw the guilty plea or at least a motion for a continuance of the sentencing so that the evaluation could be performed; and (d) failed to present mitigating evidence and expert testimony regarding the effect that alcohol, drugs, and extreme emotional and psychological distress may have had on Arevalo's behavior at the time of the offense.

In Ground 2, petitioner alleges that he did not enter his guilty plea knowingly, intelligently, and voluntarily because: (a) neither the state trial court nor his counsel did anything to explain or reconcile the alleged ambiguity regarding the potential range of sentencing created by the stipulated sentence, the possibility of probation on Count 1, and the lesser recommendation made by the Division of Probation and Parole; (b) he was rendered ineligible for probation because the psychosexual evaluation provided for in the plea agreement was never conducted, and his counsel failed to correct the matter through the errors and omissions alleged under Ground 1(c); and (c) the state trial court failed to thoroughly explain the possible range of punishment during the plea colloquy regarding whether petitioner could be eligible for probation as to Count 1.

In Ground 3, petitioner alleges that he was denied due process and a fair sentencing hearing when the State breached the plea agreement by failing to conduct the psychosexual evaluation that could have made him eligible for probation or otherwise affected the sentencing court's exercise of its discretion.

Petitioner prays, *inter alia*, for an order granting him the option of receiving specific performance of the plea agreement in lieu of withdrawal of the plea, *i.e.*, that he be resentenced with the benefit of a psychosexual evaluation. See #35, at 15.

### *Governing Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 2066 n.7, 138 L.Ed.2d 481 (1997). Under this deferential standard of review, a federal court may not grant habeas relief merely on the basis that a state court decision was incorrect or erroneous. *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16, 124 S.Ct. at 10. A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 17, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

To the extent that the state court's factual findings are challenged intrinsically based upon evidence in the state court record, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, the AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972. If the state court factual findings withstand intrinsic review under this deferential standard, they then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1); and they may be overturned based on new evidence offered for the first time in federal court, if other procedural prerequisites are met, only on clear and convincing proof. 393 F.3d at 972.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Davis*, 333 F.3d at 991.

### *Discussion*

On the face of the record, petitioner has established a right to relief under Ground 3 of the petition for breach of the plea agreement. The state district court's rejection of this claim both was based upon an unreasonable determinations of fact and was contrary to clearly established federal law.

It long has been clearly established federal law that a criminal defendant has a due process right to enforce the terms of his plea agreement. *Santobello v. New York*, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498-99, 30 L.Ed.2d 427 (1971); *Buckley v. Terhune*, 441 F.3d 688, 694-95 (9th Cir. 2006). The construction and interpretation of the plea agreement are, within broad bounds of reasonableness, matters of state law. *Ricketts v. Adamson*, 483 U.S. 1, 5

-8-

n. 3, 107 S.Ct. 2680, 2685 n.3, 97 L.Ed.2d 1 (1987); *Buckley*, 441 F.3d at 694-95.  If a state court decision fails to properly apply the applicable state law principles in interpreting a plea agreement, the decision is an objectively unreasonable application of clearly established federal law.  *Buckley*, 441 F.3d at 695.  If the decision fails to apply the appropriate state law principles at all, the decision "is unquestionably contrary to clearly established law."  *Id.*

In the present case, at the outset, the state district court decision was based upon two unreasonable determinations of fact that are directly refuted by the state court record.

First, the state district court construed the petitioner's claim only as one alleging that his plea agreement was breached because he was under the impression that he would receive probation.  Petitioner's core claim, however, instead quite clearly was that the plea agreement was breached because the State had not conducted the psychosexual evaluation that could have allowed him the possibility of being considered for probation on Count 1.  The state district court's analysis of the petitioner's claim accordingly started from a fundamental misapprehension of the actual basis for the petitioner's claim.

Second, the state district court found that it was clear to petitioner that he would not be eligible for probation by virtue of the plea agreement.  This finding of fact unquestionably is directly contradicted and refuted by the state court record.  The guilty plea agreement clearly provided that, as to Count I, Arevalo would be eligible for probation if the psychosexual evaluation certified that he did not represent a high risk to reoffend.  The agreement stated that he would be ineligible for probation only as to Count 2.  The plea agreement further expressly stated that the sentencing court was not bound by the recommendation of the parties as to sentencing.

The state district court decision further was contrary to clearly established federal law. The state district court's conclusions of law include no discussion at all of Nevada state law principles applicable to specific performance of guilty plea agreements.[12]  The decision accordingly was "unquestionably contrary to established law."  *Buckley, supra*.

---

[12] #28, Ex. 34, at 3-6.

-9-

Given that the state court decision rejecting the petitioner's claim both was based upon unreasonable determinations of fact and further was contrary to clearly established federal law, the Court reviews the claim *de novo* rather than on deferential AEDPA review.

On *de novo* review, the Court concludes that the State breached the plea agreement under applicable Nevada state law authorities and that the breach had a substantial and injurious effect on Arevalo. *See Buckley*, 441 F.3d at 697 (applying the *Brecht* harmless error standard).[13]

The Nevada Supreme Court's decision in *Stubbs v. State*, 114 Nev. 1412, 972 P.2d 843 (1998), summarizes the governing Nevada state law principles applicable to enforcement of plea agreements:

> "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Thus, this court has repeatedly held that when the state enters into a plea agreement, it is held to "the most meticulous standards of both promise and performance." *See, e.g., Statz v. State*, 113 Nev. 987, 992, 944 P.2d 813, 816 (1997); *Citti v. State*, 107 Nev. 89, 91, 807 P.2d 724, 726 (1991); *Van Buskirk v. State*, 102 Nev. 241, 243, 720 P.2d 1215, 1216 (1986); *Kluttz v. Warden*, 99 Nev. 681, 683-684, 669 P.2d 244, 245 (1983). Violation of either the terms or the spirit of the agreement requires reversal. *Citti*, 107 Nev. at 91, 807 P.2d at 726.
>
> . . . . .
>
> "The violation of a plea bargain by the state requires reversal." *Statz*, 113 Nev. at 995, 944 P.2d at 818 (*citing Van Buskirk*, 102 Nev. at 243, 720 P.2d at 1216). This court orders specific performance of a plea agreement where it will implement the parties' reasonable expectations and there is no new information or change of circumstances which would bind the sentencing court to an unsuitable disposition. *Van Buskirk*, 102 Nev. at 244, 720 P.2d at 1216-17.

114 Nev. at 1414 & 1415, 972 P.2d at 845.

/ / / /

---

[13] The Court notes, however, that the Supreme Court of Nevada has held that, under Nevada state law, a defendant is not required to demonstrate that the error was not harmless error in order to secure specific performance of a plea agreement. *Echeverria v. State*, 119 Nev. 41, 44, 62 P.3d 743, 745 (2003).

-10-

The Court has little difficulty in concluding that the State breached Arevalo's plea agreement under applicable Nevada state authorities. In *Van Buskirk v. State*, 102 Nev. 241, 720 P.2d 1215 (1986), the State agreed as part of a plea deal to send the defendant for evaluation and treatment for alcoholism prior to sentencing, and he was informed that the sentence that he received would depend upon the results of his evaluation and treatment. The evaluation that was promised was not performed prior to sentencing, however. The Nevada Supreme Court held that the defendant's plea had been induced in part by the promised evaluation and that the state district court violated both the terms and spirit of the plea bargain by sentencing the defendant without the evaluation having been performed. 102 Nev. at 242-43, 720 P.2d at 1215-16.

Similarly, in the present case, Arevalo's plea was induced in part by the express statements in the plea agreement that the Division of Parole and Probation "shall arrange for a psychosexual evaluation as part of the division's presentence investigative report to the Court" and that "I will be eligible for probation" as to Count 1 if the evaluation certified that he did not represent a high risk to reoffend. The plea agreement further provided that the sentence recommended by the parties was not binding on the sentencing court, such that, accordingly, the possibility of probation on Count 1 was not necessarily automatically ruled out by the stipulated sentence. The State did not uphold "the most meticulous standards of both promise and performance" under Nevada law as to these express promises. The State instead failed to conduct the psychosexual evaluation in the first instance. The State then represented to the state district court at sentencing – directly contrary to the plea agreement – that probation was "not an option in this case," when in fact probation potentially could have been an option for the court to consider if the State had complied with the agreement. The state district court then violated both the terms and the spirit of the plea agreement by sentencing Arevalo without the psychosexual evaluation having been performed.

The Court accordingly holds that the State breached Arevalo's plea agreement under applicable Nevada state law principles governing the construction and enforcement of guilty plea agreements.

The Court further concludes that the breach of the plea agreement had a substantial and injurious effect on Arevalo. Petitioner was entitled under the plea agreement to a sentencing made with the benefit of the psychosexual evaluation, an evaluation that potentially would have made him eligible for consideration for probation by the sentencing court as to Count 1. He instead was materially prejudice by being sentenced by a court that had ruled out any possibility of probation as to Count 1, without regard to what may have been shown by a psychosexual evaluation. A deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's favor can establish the requisite prejudice for a constitutional violation. *See,e.g., United States v. Kwan* 407 F.3d 1005, 1018 (9th Cir. 2005)(sufficient prejudice to establish ineffective assistance of counsel under the *Strickland* standard). In this regard, petitioner is not required to establish speculative propositions that are entirely beyond his power to establish, *i.e.*, what the *State's* psychosexual evaluation would have found and what a sentencing court would have done if it had properly considered all potentially available sentencing options on the sentencing record required by the plea agreement.[14]

The respondents otherwise have not established that probation was unavailable on Count 1 under Nevada state law based upon a psychosexual evaluation finding that Arevalo did not present a high risk to reoffend. Respondents initially make a bald, unsupported statement in the answer that "Arevalo was not going to get probation." However, they qualify the statement later in the answer, by stating only that "[h]e knew that he was not going to get probation on the kidnapping charge." #32, at 6, lines 22-23; *id.*, at 9, lines 18-19. The first, unqualified statement is unsupported, and the second, qualified statement begs the question.

---

[14] The situation in this case is distinguishable from the situation where a petitioner is claiming that his defense counsel should have presented expert mental health testimony but then fails to present evidence on post-conviction review tending to establish what such expert testimony would have shown. In this instance, the evaluation in question is one that is performed by the State and thus is one over which the petitioner has no control. The Court further notes, again, that Nevada state authorities do not require a demonstration of prejudice or absence of harmless error as a prerequisite for specific performance of a breached plea agreement. *See Echeverria*, *supra* note 13. The Court considers prejudice and the harmless error issue here only insofar as such consideration arguably constitutes a required part of the federal analysis outlined in *Buckley, supra.*

1 Nevada statutory law instead stated on the date of the March 26, 2002, offense that probation
2 and suspension of sentence were available to a person convicted of "[a]ttempted sexual
3 assault of a person who is 16 years of age or older pursuant to NRS 200.366," *i.e.*, the
4 offense of which Arevalo was convicted under Count 1, if a psychosexual evaluation found
5 that he did not represent a high risk to reoffend. N.R.S. 176A.110(1) & (3)(a), *as amended*
6 *through* 2001 Nev. Laws, c. 345, § 3. Absent citation to apposite authority, the respondents'
7 conclusory assertion to the contrary is not persuasive.

8 The breach of the plea agreement accordingly had a substantial and injurious effect
9 on Arevalo. The breach deprived him of the opportunity to have probation considered as a
10 sentencing option as to Count 1 and resulted in his being sentenced by a court that had ruled
11 out any possibility of probation, without regard to the finding of a psychosexual evaluation.

12 Having found both that the State breached the plea agreement and that the breach had
13 a substantial and injurious effect on petitioner, the Court turns to the appropriate remedy for
14 the State's breach.

15 As a general matter, "[f]ederal habeas courts are authorized, under 28 U.S.C. § 2243,
16 to dispose of habeas corpus matters 'as law and justice require.'" *Nunes v. Mueller*, 350 F.3d
17 1045, 1057 (9th Cir.2003) (*quoting Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 2113,
18 2118, 95 L.Ed.2d 724 (1987)). Once a determination has been made that federal habeas
19 relief is warranted, the district court has broad discretion, within the context of the unique facts
20 and circumstances of the particular case, in fashioning a remedy that is tailored to the injury
21 suffered from the constitutional violation without unnecessarily infringing upon competing
22 interests. *See Nunes*, 350 F.3d at 1056-57.

23 The potential range of remedies in particular for the breach of a plea agreement
24 include specific performance of the plea agreement and withdrawal of the plea, *i.e.*, rescission
25 of the plea agreement. *E.g., Buckley*, 441 F.3d at 699. Whether one or the other or both
26 remedies should be available in the given case is a matter within the discretion of the court
27 that is seeking to determine the appropriate remedy. *E.g., Santobello*, 404 U.S. at 263, 92
28 S.Ct. at 499; *Pierre v. Thompson*, 666 F.2d 424, 426-27 (9th Cir. 1982).

In the particular circumstances of the present case, the Court finds that specific performance of the plea agreement is the most appropriate remedy. The injury suffered from the breach of the plea agreement at bottom was that petitioner was subjected to a sentencing without the benefit of a psychosexual evaluation that was required under the plea agreement and that may have rendered him eligible for probation on Count 1. That injury would be remedied by a resentencing conducted before a different judge with the benefit of the required psychosexual evaluation.[15] Wholly rescinding the plea bargain, on the other hand, would provide greater relief than would be required to remedy the constitutional injury. Further, rescinding the plea bargain potentially would unnecessarily infringe upon competing interests of the State by requiring the State to again marshal evidence on a potentially stale case, including locating, and revisiting the case with, a previously-traumatized victim of a sexual offense years after the fact. While such competing interests might not necessarily preclude the option of withdrawing the plea agreement in an appropriate case, overriding these interests in the present case is not warranted given that specific performance instead will fully remedy the constitutional injury suffered.

The Court accordingly will conditionally grant a writ of habeas corpus, such that the judgment of conviction will be vacated and petitioner unconditionally released unless counsel is promptly made available for petitioner in the state proceedings and, within one hundred and twenty (120) days, as further specified below, he is resentenced before a different judge with the benefit of the psychosexual evaluation required by the plea agreement.

---

[15]*Cf. Santobello*, 404 U.S. at 263, 92 S.Ct. at 499 ("whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner would be resentenced by a different judge"); *see also Sanchez v. Lamarque*, 2007 WL 1829323 (9th Cir. 2007)(ordering specific performance rather than rescission as the appropriate and equitable remedy where the breach had denied the petitioner eligibility for good time and work credits that affected his eligibility for parole); *accord Echeverria*, 119 Nev. at 44, 62 P.3d at 745 (requiring that case be reassigned to a different sentencing judge for resentencing when specific performance is ordered); *Van Buskirk*, 102 Nev. at 244, 720 P.2d at 12116-17 ("In this case, specific enforcement of the plea bargain is the most effective method of repairing the harm caused by the violation and implementing the reasonable expectations of the parties. Specific enforcement will not bind the district court to an inappropriate disposition of the case or otherwise impinge upon the court's sentencing discretion. Indeed, specific enforcement would promote informed exercise of that discretion by providing the district court with further information with which to make an appropriate sentencing decision.").

The Court otherwise is not persuaded that petitioner is entitled to greater relief on the remaining claims and allegations than the relief provided herein on Ground 3.[16]

The Court further would note that the overall matter in the state and federal courts potentially may be subject to a resolution between the parties within the context of the state resentencing proceedings. According to the state pre-sentence report, petitioner is an El Salvadoran national rather than a United States citizen, and federal immigration authorities were to initiate removal proceedings upon the original state judgment of conviction, to be executed upon the petitioner's release from state custody. On a resentencing, the parties potentially may be able, if they so desire, to recommend a sentencing combination that, with the time previously served, would enable the State to transfer petitioner to the custody of immigration authorities for removal from the United States, perhaps with a condition of any

---

[16] The Court refers to the claims below in the manner in which they are subdivided in the text at page 6, *supra*.

The allegations of ineffective assistance of counsel in Ground 1(a) and the related due process allegations in Ground 2(a) – regarding a failure to reconcile an alleged ambiguity in the potential range of sentencing – were not such as to render the plea not knowing, intelligent and voluntary. The circumstances alleged did not undermine the validity of the plea itself, particularly as the alleged ambiguity is premised in part on events occurring *after* the plea was entered, such as the lesser sentencing recommendation made by the Division of Parole and Probation. The plea agreement itself was clear as to the potential range of sentencing discretion by the sentencing court. The agreement simply was not followed by the State.

The claims of ineffective assistance of counsel in Grounds 1(b) through (d) regarding alleged errors and omissions by counsel leading up to the sentencing are rendered moot by the resentencing relief granted herein.

The claim in Ground 2(b) – that the plea was not knowing, intelligent, and voluntary because the psychosexual evaluation was not performed and because of counsel's related alleged failures -- does not establish a basis for overturning the underlying plea separate and apart from the possibility of rescission for breach that is addressed in the text as to Ground 3. The events subsequent to the plea did not render the plea not knowing, intelligent, and voluntary. The post-plea events instead established a claim for breach of the plea agreement.

Finally, the Court is not persuaded as to Ground 2(c) that the state trial court's failure to thoroughly explain the availability of probation as to Count 1 in the oral plea colloquies rendered the plea not knowing, intelligent, and voluntary. The written plea agreement clearly explained the availability of probation on Count 1 depending upon the results of the psychosexual evaluation. The failure of the state district court to more thoroughly explain the potential availability of probation on Count 1 – which pertained to the lower range of the state court's sentencing discretion rather than Arevalo's maximum potential exposure under the plea – in the two plea colloquies did not render the plea not knowing, intelligent, and voluntary. See #27, Ex. 13, at 4, lines 1-4.

-15-

state probation, parole and/or lifetime supervision that petitioner not illegally reenter or otherwise violate the immigration laws of the United States.  The Court only notes the possibility of such a resolution of all related proceedings should the parties so desire.

IT THEREFORE IS ORDERED that a conditional writ of habeas corpus shall be GRANTED, such that the judgment of conviction will be vacated and petitioner unconditionally released unless counsel is promptly made available for petitioner in the state proceedings and, within one hundred and twenty (120) days of entry of this order, petitioner is resentenced before a different judge with the benefit of the psychosexual evaluation required by the plea agreement and a new or amended judgment of conviction is entered in the state court.  If an appeal is taken, the one hundred and twenty (120) day period referenced above shall run, subject to the order of a higher court on review, from the later of entry in this Court of the order on mandate or the conclusion of any proceedings on a petition for a writ of *certiorari*, including the expiration of any period for seeking rehearing therefrom.

The Clerk of Court shall enter final judgment accordingly, tracking the preceding paragraph verbatim.  It is the Court's intention that said judgment shall be final and appealable and shall close this matter, subject to a possible later motion to reopen the matter to enter an unconditional writ if then warranted and further without prejudice to continuing representation of petitioner by the Federal Public Defender in relation to this matter.

IT FURTHER IS ORDERED that, even should petitioner's federal habeas counsel otherwise not appear as counsel in the state court proceedings, the Federal Public Defender nonetheless is expressly authorized by this order to take all steps necessary to facilitate the prompt implementation of relief in the state courts immediately following upon this order, to consult with any separately-appointed state counsel, to monitor developments thereafter, and to actively participate in any discussions and efforts concerning a possible resolution of all related state and federal proceedings, including any related immigration matters.

DATED:  March 24, 2008

_____
EDWARD C. REED
United States District Judge